UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    No. 2:06-cv-00387-MCE-JFM

        Plaintiff,

    v.                                       <u>MEMORANDUM AND ORDER</u>

HONEYWELL INTERNATIONAL, INC.,
ALPHEUS KAPLAN, NEHEMIAH
DEVELOPMENT COMPANY

        Defendants.
_____/

ALPHEUS KAPLAN AND
NEHEMIAH DEVELOPMENT COMPANY,

        Third-Party Plaintiff,

    v.

HONEYWELL INTERNATIONAL, INC.,
AMCAL, KIRK L. BRYSON, GENEVIEVE
FULLER, JOHN B. ALLEN, SR., JANET
ALLEN, JOHN MUNN AND ANN MUNN, ELGIN
BOWERS AND CAROLYN BOWERS, ASSOCIATED
ENGINEERS AND PLANNERS, INC., WARREN
NOTEWARE, JAMES MESSINGER, STEEL
BUILDING SYSTEMS, INC., MYRTLE SALMON,
CHARTER MORTGAGE & INVESTMENTS, INC.,
SHELDON THOMPSON, CHARLES C. BRUNER,
ROBERT E. MILLER AND MEREDITH MILLER,
JACK BRUSATORI, ROBERT EARL OLSON AND
MARTHA WADELL OLSON, SUMMIT APARTMENTS,
WALTER E. HAMILTON, JEAN HAMILTON,
CHARLES O. ALLEN AND BARBARA E. ALLEN,

1

FRANK HARDY, CHRISTINA SUNG, THOMAS P. JONES AND JACQUELINE L. JONES, ROBERT BUGNI AND MARGOT BUGNI, LEO MONSON AND MAURINE MONSON, PHYLLIS STUMPF

Third-Party Defendants.

----oo0oo----

Third-Party Plaintiffs ("Third-Party Plaintiffs") request summary adjudication that Third-Party Defendant Charles C. Bruner ("Third-Party Defendant") is a Responsible Party under the Comprehensive Environmental Response, Compensation And Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and is liable for contribution of an equitable share of the response costs incurred by the United States Environmental Protection Agency ("U.S. EPA") at the Central Eureka Mine Superfund Site in Amador County, California ("Site"). Third-Party Plaintiffs also seek summary judgment regarding the appropriate allocation of Third-Party Defendant's equitable share of response costs and request this Court render a judgment ordering that Third-Party Defendant pay to them a contribution of One-Hundred Sixty Thousand Dollars ($160,000).

**BACKGROUND**

**A. Factual Background**

Third-Party Plaintiffs provided the Court with ample facts they consider to be undisputed. However, contrary to the requirements of Rule 56(e)(2) that an opposing party "must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial," Third-Party Defendant's Opposition is devoid of any citations whatsoever.

2

Additionally, in violation of Local Rule 56-260(b), Third-Party Defendant also failed to reproduce Third-Party Plaintiffs' Statement of Undisputed Facts, nor did he specifically address any of the facts included within.[1]

This Court addressed a similar situation with disapproval in Singh v. Yellow Transp., Inc., 2007 WL 1795778 (E.D. Cal. 2007). In that case, this Court stated, "When considering a motion for summary judgment, the Court does not have an obligation to scour the record in search of a genuine issue of triable fact..." Id. at 3 (internal citations and quotations omitted). This Court is not obligated to do for the Third-Party Defendant what he has failed to do for himself. Therefore, this Court's decision is based on the following uncontested facts provided by the Third-Party Plaintiffs.

Third-Party Defendant owned the Vista Ray subdivision from 1978 until 1982. Third-Party Def.'s Answer to Third-Party Compl., ¶ 86 ("Answer"). Vista Ray is located within the boundaries of the Site as determined by the U.S. EPA. Id. at ¶ 89.

///

---

[1] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial. The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing with the Clerk of all evidentiary documents cited in the opposing papers." E.D. Cal. Local Rule 56-260(b).

When Third-Party Defendant purchased Vista Ray, it was undeveloped land, though it had previously been subdivided into twelve lots. Decl. Of Charles C. Bruner, ¶ 13 ("Bruner Decl."); Bruner Dep., 15:13-15. Third-Party Defendant subsequently developed the property. He excavated and trenched the land for roads, underground utilities, and finished lots. He contracted with third parties for the grading and excavation of Vista Ray in connection with the construction of streets and the installation of the underground utilities. Additionally, he contracted with the City of Sutter Creek for the construction of the streets, street lighting, sanitary sewers, water distribution pipes, and other utility distribution facilities. Answer, ¶¶ 86, 91. In approximately 1978-1979, Third-Party Defendant constructed four homes on two streets in the subdivision. Bruner Decl., ¶ 14; Reidy Affidavit, Exh. D.

Vista Ray was located adjacent to and northerly of the Mesa de Oro mound of mine tailings, which were produced by the Central Eureka Mine and tested positive for arsenic content in excess of health-based standards. Answer ¶ 87; Reidy Liability Affidavit, ¶ 6.

According to the unrefuted declaration of Third-Party Plaintiffs' expert witness, erosion of the Central Eureka Mine tailings produced arsenic contamination found in the downslope from the Mesa de Oro into the Vista Ray subdivision. The migration of the mine tailings was due solely to such erosion.

///

///

///

Based on aerial photographs, the erosion occurred from 1944 to 1989, with the majority of the migration occurring when the tailings pile was uncovered or was disturbed by grading, earthwork, or blasting. The erosion was somewhat mitigated between 1960 and 1977 when the mine tailings became covered with earth, grasses, and shrubs. Will Affidavit, ¶¶ 9-10.

In 1995, the U.S. EPA tested the soils of the Vista Ray subdivision and found arsenic content at levels in excess of health standards. Will Affidavit, ¶ 13.

The U.S. EPA subsequently contracted with third parties to excavate, remove, and replace soil and landscaping from all residential lots in the Vista Ray subdivision. Costs for soil sampling and testing, air quality monitoring, and project management reports on the removal actions conducted on the lots in Vista Ray were included in the response costs incurred by the U.S. EPA. Costs for health assessments of persons living in homes in Vista Ray, as well as costs for labor and materials of U.S. EPA's removal actions were also included in those response costs. Will Affidavit, ¶¶ 14-15.

**B.  Procedural Background**

In the original action, Plaintiff United States sought reimbursement from Honeywell International, Alpheus Kaplan, and Nehemiah Development Company for costs incurred by the U.S. EPA in an Emergency Removal Action undertaken at the Site from approximately 1994-2001.
///

The United States alleged that the clean-up was necessitated by the movement and placement of mine tailings from the Central Eureka Mine within the Site, which resulted in elevated levels of arsenic in the soil.  Third-Party Plaintiffs, Kaplan and Nehemiah, subsequently filed a First Amended Third-Party Complaint seeking contribution under 42 U.S.C. § 9613(f) from thirty-seven (37) Third-Party Defendants, including Third-Party Defendant Bruner.

Third-Party Plaintiffs ultimately settled with the United States, agreeing to pay Six Hundred Thousand Dollars ($600,000) and to transfer an additional One-Hundred Twenty-One Thousand Dollars ($121,000) they collected via private party settlements to the United States as well.

The only non-settling Third-Party Defendant remaining is Third-Party Defendant Bruner.  Third-Party Plaintiffs now seek summary adjudication as to Third-Party Defendant's liability and request contribution of One-Hundred Sixty Thousand Dollars ($160,000).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

*///*

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

///

///

7

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

///

///

///

8

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.    Third-Party Defendant's Liability**

      **1.    Third-Party Defendant's Liability Under CERCLA**

"CERCLA was a response by Congress to the threat to public health and the environment posed by the widespread use and disposal of hazardous substances.  Its purpose was to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created."  <u>Mardan Corp. v. C.G.C. Music, Ltd.</u>, 804 F.2d 1454, 1455 (9th Cir. 1986).  "It generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed...The statute...authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation."

///

1 _3550 Stevens Creek Assocs. v. Barclays Bank of Cal._, 915 F.2d

2 1355, 1357 (9th Cir. 1990); _see_ 42 U.S.C. § 9607(a).

3 　　To do so, private parties "must establish that 1) the site

4 on which the hazardous substances are contained is a 'facility'

5 under CERCLA's definition of that term; 2) a 'release' or

6 'threatened release' of any 'hazardous substance' from the

7 facility has occurred; 3) such 'release' or 'threatened release'

8 has caused the plaintiff[s] to incur response costs that were

9 'necessary' and 'consistent with the national contingency plan';

10 and 4) the defendant is within one of four classes of persons

11 subject to the liability provisions of Section 107(a)." _3550_

12 _Stevens Creek Assocs._ at 1358 (internal citations omitted).

13 Section 107(a) of CERCLA, as codified by 42 U.S.C. § 9607(a),

14 defines those four categories of responsible parties as follows:

15 　(1)　the owner and operator of a vessel or a facility,
16 　(2)　any person who at the time of disposal of any
     　　　hazardous substance owned or operated any facility
     　　　at which such hazardous substances were disposed
17 　　　of,
18 　(3)　any person who by contract, agreement, or
     　　　otherwise arranged for disposal or treatment, or
     　　　arranged with a transporter for transport for
19 　　　disposal or treatment, of hazardous substances
     　　　owned or possessed by such person, by any other
20 　　　party or entity, at any facility or incineration
     　　　vessel owned or operated by another party or
21 　　　entity and containing such hazardous substances,
     　　　and
22 　(4)　any person who accepts or accepted any hazardous
     　　　substances for transport to disposal or treatment
23 　　　facilities, incineration vessels or sites selected
     　　　by such person, from which there is a release, or
24 　　　a threatened release which cause the incurrence of
     　　　response costs, of hazardous substance, shall be
25 　　　liable.

26 　　First, under CERCLA, a "facility" includes "any site or area

27 where a hazardous substance has been deposited, stored, disposed

28 of, or placed, or otherwise come to be located."

42 U.S.C. § 9601(9)(B). Vista Ray clearly falls within this definition since there is ample evidence in the record showing the existence of high levels of arsenic throughout the property and since the EPA included the entire subdivision within the Site.

Next, CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22). The term is liberally construed. <u>Lincoln Prop., Ltd., v. Higgins</u>, 823 F. Supp. 1528, 1536 (E.D. Cal. 1992). In <u>Lincoln Properties</u>, the Ninth Circuit cited with approval the Fifth Circuit's holding that "developers could be held liable under CERCLA notwithstanding the fact that they did not introduce the hazardous substances into the environment in the first place." <u>Lincoln Prop.</u> at 1537 (citing <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1573 (5th Cir. 1988)). In <u>Tanglewood</u>, the Fifth Circuit had actually addressed the meaning of the word "disposal," but the Ninth Circuit went further in <u>Lincoln Properties</u> stating that "[t]he definition of 'release' at issue here is even broader...and includes additional terms such as 'emitting' and 'escaping' that imply no active human participation." <u>Lincoln Prop.</u> at 1538 (footnotes omitted). It is undisputed that the Vista Ray subdivision tested positive for arsenic contamination. Therefore, a "release" under the terms of the statute unquestionably occurred.

///

///

///

11

Additionally, the parties do not dispute that arsenic is a "hazardous substance" under CERCLA Section 101(14), 42 U.S.C. 9601(14), nor do they dispute that the clean-up costs were "necessary" and "consistent with the national contingency plan."

Finally, if Third-Party Defendant falls within any one of the four categories of individuals subject to CERCLA liability, he is a "potentially responsible party" or a "PRP." <u>See</u> <u>Carson Harbor Vill., Ltd., v. Unocal Corp.</u>, 270 F.3d 863, 871 (9th Cir. 2001). Third-Party Defendant admits in his Answer that he is a potentially liable party under 42 U.S.C. § 9607(a)(2). Third-Party Plaintiff points to this concession to conclusively establish Third-Party Defendant's statutory liability. In response, Third-Party Defendant fails to cite to any facts disputing his admission. Since Third-Party Defendant failed to produce any evidence contradicting his own admission that he is a PRP, Plaintiffs have established this element of their *prima facie* case. However, even if that were not the case, there is ample undisputed evidence in the record to support the same conclusion.

Under 42 U.S.C. § 9607(a)(2), one category of PRP is a person who owned the facility at the time of the disposal of the hazardous substance. "CERCLA imposes liability on the past or present owner of a facility at which hazardous wastes were released or disposed of...'Mere ownership of the property on which the release took place is sufficient to impose liability under § 107(a), regardless of any control or lack of control over the disposal activities.'"

///

12

Lincoln Prop. at 1533 (E.D. Cal. 1992) (quoting U.S. v. A & N Cleaners and Launderers, Inc., 788 F. Supp. 1317, 1332 (S.D.N.Y. 1992), overruled on other grounds by Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321 (2nd Cir. 2000)).  It is undisputed that Third-Party Defendant was an "owner" of the Vista Ray property during the time of excavation, grading and further development.

Additionally, a "disposal" is "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste into or on any land ... so that such ... waste ... may enter the environment ... or be discharged into any ground waters."  Kaiser Aluminum & Chemical Corp. v. Catellus Dev. Corp., 976 F.2d 13383, (9th Cir. 1992) (citing 42 U.S.C. § 9601(29) (adopting the definition set forth in section 1004 of the Solid Waste Disposal Act, 42 U.S.C. § 6903(3))).  In Kaiser Aluminum, the Ninth Circuit again agreed with the Fifth Circuit's decision in Tanglewood and held that "by dispersing ... contaminated soil throughout [a] subdivision the developers had disposed of it for purposes of section 9607(a)."  Kaiser Aluminum at 1342 (citing Tanglewood, 849 F.2d 1568).  Like the Fifth Circuit, this circuit determined that "disposal" should be broadly construed to include the "subsequent 'move[ment], dispers[al], or release...[of such substances] during landfill excavations and fillings,'" Kaiser Aluminum at 1342 (quoting Tanglewood at 1573).  Therefore, Third-Party Defendant's development of Vista Ray qualifies as a "disposal" under the statutory scheme.

///

13

Since Third-Party Defendant admitted that he is a PRP, and since there is undisputed evidence in the record supporting both this admission and the remaining CERCLA requirements, this Court finds Third-Party Defendant liable pursuant to 42 U.S.C. § 9607(a)(2).

## 2. Third-Party Defendant's Innocent Landowner Defense

Because "CERCLA is a strict liability statute with few defenses," Section 9607(b), unlike Section 9607(a), is narrowly construed. <u>Lincoln Prop.</u> at 1537, 1539. Section 9607(b) states in pertinent part:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by –
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substances concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

Third-Party Defendant devotes his entire Opposition to the argument that, under 42 U.S.C. § 9607(b), he qualifies as an "Innocent Landowner," thereby avoiding any liability for cleanup costs.

14

In order to successfully raise this defense, Third-Party Defendant must establish by a preponderance of the evidence that a third party who was not Third-Party Defendant's employee or agent, and with whom Third-Party Defendant had no direct or indirect contractual relationship, was the sole cause of the relevant damages. 42 U.S.C. § 9607(b)(3). If Third-Party Defendant is able to meet this threshold requirement, he must further prove, also by a preponderance, that he exercised due care with respect to the hazardous substance and that he took precautions against foreseeable acts or omissions by the third party. Id.

The threshold question, and the issue that is ultimately fatal to Third-Party Defendant's defense, is whether a third party was the sole cause of the arsenic contamination in the Vista Ray subdivision. It is unclear whether Third-Party Defendant intends to argue that the Central Eureka mining operations were the sole cause of the contamination, or whether he intends to argue that the excavation contractors were the sole cause. However, since Third-Party Defendant contracted with the City of Sutter Creek and other third parties to perform excavation and grading work for his own subdivision, he is unable to sustain a claim under the latter argument. See Lincoln Prop. at 1543 ("a landowner is precluded from raising the third-party defense...if the contract between the landowner and the third party somehow is connected with the handling of hazardous substances") (quoting Westwood Pharm. v. Nat'l Fuel Gas Distrib. Corp., 964 F.2d 85, 89 (2nd Cir. 1992)).

///

Therefore, this Court will interpret Third-Party Defendant's argument as asserting that, under the terms of the statutory defense, he is an innocent landowner because the mining operations were the sole cause of the Vista Ray contamination.

The Ninth Circuit analyzed the phrase "caused solely by" in detail in <u>Lincoln Properties.</u> <u>Id.</u> at 1540-1543. That court rejected both a fault-based and an acts/omissions approach to interpretation and determined instead that the phrase required a "causation" analysis. <u>Id</u>. at 1542. The court held that the language, "as used in CERCLA, incorporates the concept of proximate or legal cause. If the defendant's release was not foreseeable, and if its conduct - including acts as well as omissions - was 'so indirect and insubstantial' in the chain of events leading to the release, then the defendant's conduct was not the proximate cause of the release and the third party defense may be available." <u>Id</u>. (quoting 131 Cong. Rec. 34715 (1985)(statement of Rep. Frank)).

Any argument that the release of materials is an unforeseeable consequence of the residential development of raw land is simply untenable. To the contrary, it is eminently foreseeable that development of such land would result in a release of whatever substances, hazardous or not, were in the soil.

///
///
///
///
///

16

In Lincoln Properties the defendant county was able to show that
a third party was the sole cause of the release of hazardous
substances even though these substances leaked from county-owned
sewer pipes because the county did nothing to facilitate the
leaks and "[could not] be expected to 'foresee' that its
ordinance prohibiting the discharge of cleaning solvents would be
violated." Id. at 1543 n.25. In contrast, Third-Party Defendant
here took affirmative steps in developing his land. He actively
graded and excavated the property, and it is reasonable to expect
that any contaminants in the soil would have been agitated and
thereby released as a result. Third-Party Defendant contributed
to the release and is unable to cast blame solely on a third
party.

Because Third-Party Defendant cannot show that a third party
was the "sole" cause of the release of arsenic from the Vista Ray
subdivision, there is no need to discuss whether he exercised due
care or took the proper precautions to prevent such a release.
See id. at 1543-1544 (addressing due care and precautions only
after establishing that a third party was the sole cause of the
release).

The parties appear distracted by whether Third-Party
Defendant had "reason to know" of the presence of the hazardous
substance on the Vista Ray property prior to his purchase of that
land. See 42 U.S.C. § 9601(35)(b). Generally, "one who
purchases land from a polluting owner or operator cannot present
a third-party defense." Carson Harbor Vill., Ltd., v. Unocal
Corp., 270 F.3d 863, 887 (9th Cir. 2001).
///

Nevertheless, "if the property [was] purchased after disposal or placement, and the purchaser did not know and had no reason to know that hazardous substances were disposed of there," the innocent landowner defense applies. Id. However, only "[w]holly innocent landowners will not be held liable...To get a release from liability under this section, a landowner must not have himself or herself allowed or permitted any storage, not have contributed to the release of any substance and, and this is very important, the landowner has the burden of proof to show that this landowner had neither actual nor constructive knowledge at the time of purchase that the property had been used for hazardous waste materials." Id. (emphasis added).

Third-Party Defendant's case differs from that in Carson Harbor Village because that court dealt only with the concept of purely passive migration of a hazardous substance as a "disposal" under the CERCLA framework. In this case, there is nothing passive about the affirmative steps Third-Party Defendant took to develop his property.

The critical point here, and the point glossed over by the parties, is that in order to rely on this defense, Third-Party Defendant must actually be wholly innocent. If he contributed to the release of the hazardous substance, then it is irrelevant that he was unaware that the substance was there in the first place. As discussed above, Third-Party Defendant's excavation and grading of the land in preparation for development of the subdivision constituted a "disposal" under CERCLA.

///

///

18

Therefore, Third-Party Defendant actively contributed to the "release" of the hazardous substance at the time he undertook development, and there is no need to further address whether he had "reason to know" of the presence of a hazardous substance at the time he purchased the land.

Third-Party Defendant's argument that he is an "Innocent Landowner" as that term is contemplated by CERCLA cannot stand. Accordingly, Third-Party Plaintiffs' Motion for Summary Adjudication as to Third-Party Defendant's Liability is GRANTED.

**B. Third-Party Defendant's Equitable Share of Clean-up Costs**

The calculation of damages is not ordinarily amenable to resolution at the summary judgment stage. "Rule 56 clearly contemplates a full hearing on the question of damages." Woods v. Mertes, 9 F.R.D. 318, 321 (D. Del. 1949). See also McRae v. Creedon, 162 F.2d 989, 992 (10th Cir. 1947) ("The amount of damages is always an open factual question."); Carson v. Nat'l Bank of Commerce Trust and Sav., 356 F. Supp. 811, 812 (D.C. Neb. 1973) ("Summary judgment is a poor instrument for determining recoverable damages.").

///
///
///
///
///
///
///

In the rare instances that damages have been resolved on summary judgment, there was no dispute as to at least a portion of the damages amount or as to the manner in which the amount was calculated.  See McDonald v. Batopilas Mining Co., 8 F.R.D. 226, 227 (E.D.N.Y. 1948) (granting attorney-plaintiff partial summary judgment of $4,136.60 for a fee to which the parties agreed that attorney-plaintiff was statutorily entitled, when the only dispute was whether he was limited to that amount or could recover an additional ten percent under the parties' contract); Gaetano Marzotto & Figli, S.P.A. v. G.A. Vedovi & Co., 28 F.R.D. 320, (S.D.N.Y. 1961) (determining that, under Rule 56(d), since the parties did not dispute that one had collected $206,054.32 for the other's account, that fact was established for trial). In the current case, the parties are not even close to reaching a consensus as to the appropriate amount of potential damages.

In light of the above, the rules governing motions for summary judgment are ultimately dispositive as to the allocation issue presented by Third Party Plaintiffs' Motion.  In Anderson v. Liberty Lobby, Inc., the United States Supreme Court stated "it is clear enough...that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986). "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion."  Anderson at 250.
///

In the current case, Third-Party Plaintiffs ask the Court to conclude as a matter of law that they are entitled to contribution from the Third-Party Defendant in the amount of One-Hundred Sixty Thousand Dollars ($160,000). Considering the complicated nature of the factors Third-Party Plaintiffs themselves offer for the Court's use in making this determination, it defies logic that there is "but one reasonable conclusion" as to the appropriate calculable dollar amount.

Nevertheless, Third-Party Plaintiffs assert that the Court "must" grant summary judgment since Third-Party Defendant failed to adequately respond to their motions. However, Rule 56 grants the courts more discretion than the Third-Party Plaintiffs suggest:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law...If the opposing party does not...respond[, by affidavits or as otherwise provided in this rule, by setting out specific facts showing a genuine issue for trial], summary judgment <u>should</u>, <u>if appropriate</u>, be entered against that party."

Fed. R. Civ. Pro. 56(c), (e)(2) (emphasis added). Since the Rule is not cast in the mandatory posture of "shall," and since it allows for a finding of appropriateness, the Court is not obligated to grant every motion opposed by procedurally deficient papers. Where, as here, an opposition is deemed lacking, this Court may still deny summary judgment.

///

///

///

21

In fact, this Court is prohibited from basing its decision to grant such a motion solely on an opposing party's violation of court rules.  See Martinez v. G.D. Stanford, 323 F.3d 1178, 1182-1183 (2003).  Any alternative rationale would result in "turn[ing] the summary judgment rule into a mere sanction for noncompliance with local rules." Id. at 1182.  Therefore, despite the deficiencies in Third-Party Defendant's Opposition, Third-Party Plaintiffs are still required to show that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law" on the issue of damages. Id. at 1183 (citing Fed. R. Civ. P. 56(c)).  As explained above, Third-Party Plaintiffs have not, nor can they, make the required showing on the current record.

Finally, even if summary judgment was the proper vehicle to resolve the amount of damages in this case, which it is not, this Court may elect not to do so if it determines that a trial is necessary to the adequate resolution of an issue.  In Anderson, the Supreme Court stated that it "[did not] suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."  477 U.S. 242, 255.  See also Anderson v. Hodel, 899 F.2d 766, 771-772 (9th Cir. 1990) (vacating a grant of summary judgment and demanding fuller development of the record in a case involving the interpretation of the Prevailing Rate Employees Act and various sections of the Code of Federal Regulations);

///

_Safe Flight Instrument Corp. v. McDonnell-Douglas Corp._, 482 F.2d 1086, 1093 (9th Cir. 1973) (finding that the district court "did not deny the motion [for partial summary judgment] because it was convinced that the motion was without merit, but because the issue presented was so complicated the court did not wish to dispose of it" under Rule 56).

The allocation issue here is complicated, involving the application of multiple established factors and/or those additional considerations the Court deems just. This is not a case of a relatively simply "yes" or "no" answer to a question of liability, fault, or statutory interpretation. Rather, the Court is being asked to equitably resolve a matter in an instance when it has the discretion and the responsibility to evaluate infinite alternatives prior to reaching its decision. The Court will not embark on this undertaking on less than a complete record.

Accordingly, the Court finds it inappropriate to resolve the issue of the allocation of Third-Party Defendant's equitable share on a Motion for Summary Judgment. Third-Party Plaintiffs' Motion as to the allocation of Third-Party Defendant's contribution is DENIED.

///
///
///
///
///
///
///
///

23

**CONCLUSION**

The Court finds that Third-Party Defendant Bruner is liable for an equitable share of clean-up costs incurred under 42 U.S.C. § 9601 <u>et seq.</u> and that he does not qualify for the statutory "Innocent Landowner" defense. Accordingly, Summary Adjudication on this issue is GRANTED.[2]

The Court further finds that there are genuine issues of material fact as to the resolution of the equitable share of response costs to be apportioned to Third-Party Defendant Bruner and that it is not appropriate to resolve this issue on a Motion for Summary Judgment. Accordingly, Third-Party Plaintiffs' Motion as to allocation is DENIED.

IT IS SO ORDERED.

Dated: February 22, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

24